## S96A0232. COPELAND v. THE STATE.

(469 SE2d 672)

FLETCHER, Presiding Justice.

A jury convicted Benne Copeland of malice and felony murder in the shooting death of Brian Cobb.[1] Copeland appeals contending that the admission of hearsay statements of a co-defendant violated his right of confrontation under the United States Constitution. Because there were sufficient indicia of reliability of the statements, we affirm.

The evidence at trial showed that on Superbowl Sunday, January 30, 1994, Copeland, who owned a blue Cadillac, picked up the victim Brian Cobb at his house. Cobb's grandmother saw him leave with someone driving a blue Cadillac like the one Copeland drove. The two then picked up Cedric Penson and Dexter Sistrunk and drove to Benny Hood's house.[2] Copeland went to get Hood, and when the two returned to the others waiting in the car, Hood led the group to a wooded area under the guise of showing them a place to buy marijuana. Once in the wooded area, Copeland got a gun from Penson and shot the victim twice. Penson and Sistrunk testified against Copeland.

1. After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found Copeland guilty of the crimes charged beyond a reasonable doubt.[3]

2. Corey Thompson and Denard Bell came forward as a result of posters advertising a reward by the victim's family. Thompson testified that Hood told him that he had been involved in the murder of Cobb. Bell testified that Hood told him that he and Copeland had killed someone and that Copeland was the trigger man. Copeland first contends that there was insufficient evidence independent of the statements of Hood and Penson, the two other co-conspirators, to prove the existence of a conspiracy.

(a) We have previously held that the state must make a prima facie showing of the existence of the conspiracy without resort to the declarations of the alleged co-conspirator in order to admit such declarations under the co-conspirator exception to the hearsay rule.[4] Here, the state did not rely principally on the out-of-court declara-

---

[1] The crime occurred January 30, 1994. Copeland was indicted on July 1, 1994. The jury returned its guilty verdicts on December 15, 1994. The trial court merged the felony and malice murder counts and sentenced Copeland to life imprisonment. Copeland filed a motion for new trial on January 4, 1995, which was denied on June 7, 1995. Copeland filed a notice of appeal on June 22, 1995; the case was docketed in this Court on November 7, 1995 and submitted for decision without oral argument on January 2, 1996.

[2] We affirmed Hood's conviction for malice murder. *Hood v. State*, 266 Ga. 662 (470 SE2d 235) (1996).

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] *Castell v. State*, 250 Ga. 776, 778 (301 SE2d 234) (1983).

tions of Hood to establish the conspiracy. Rather, the state called Penson, who testified that he, Copeland and Hood planned the murder together as retribution for Cobb's theft of a gun that Penson had loaned to Copeland. The existence of the conspiracy is ultimately a jury question. Penson's testimony, however, was sufficient to make a prima facie showing of the conspiracy to admit the declarations of Hood under OCGA § 24-3-5.

(b) Second, Copeland contends that admission of Hood's out-of-court statements under Georgia's co-conspirator hearsay statute, OCGA § 24-3-5,[5] violated Copeland's right of confrontation. Georgia allows the admission of declarations made by a co-conspirator during the pendency or concealment phases of the criminal activity against the other co-conspirators.[6] Because admitting statements during the concealment phase differs from the common-law rule, the United States Supreme Court has noted that evidence admitted under this exception requires a case-by-case evaluation of the hearsay for indicia of reliability.[7] In *Dutton v. Evans*,[8] the court recognized four factors that are indicia of reliability: (1) the absence of an express assertion about a past fact; (2) the declarant had personal knowledge of the identity and roles of the participants in the crime and cross-examination of the declarant would not have shown that the declarant was unlikely to know whether the defendant was involved in the crime; (3) the possibility that the declarant's statement was founded on faulty recollection was remote; and (4) the circumstances under which the declarant gave the statement suggest that the declarant did not misrepresent the defendant's involvement in the crime.[9] We have previously used these factors to determine if a co-conspirator's hearsay statement was properly admitted.[10]

Applying these factors to the facts of the present case, we conclude that only the first weighs against reliability in that the statement that Copeland and Hood killed someone and that Copeland was the shooter was clearly an assertion of a past fact and leaves nothing for the jury to infer.

The other factors, however, weigh in favor of reliability. The evidence established that the declarant, Hood, had personal knowledge of the identities and roles of the participants because two other par-

---

[5] That section provides, that "[a]fter the fact of conspiracy is proved, the declarations by one of the conspirators during the pendency of the criminal project shall be admissible against all."

[6] OCGA § 24-3-5; see also *Chatterton v. State*, 221 Ga. 424 (144 SE2d 726) (1965).

[7] *Bourjaily v. United States*, 483 U. S. 171, 183 (107 SC 2775, 97 LE2d 144) (1987).

[8] 400 U. S. 74, 88-89 (91 SC 210, 27 LE2d 213) (1970) (plurality opinion).

[9] Id. at 88-89.

[10] *Castell v. State*, 250 Ga. at 779-780. See also *Mooney v. State*, 243 Ga. 373, 390 (254 SE2d 337) (1979).

ticipants in the crime, Penson and Sistrunk, each established by their testimony that Hood had personal knowledge of the crime and its participants. Additionally, cross-examination of Hood would not have shown that he lacked knowledge of Copeland's involvement because the statement included Hood's admission of his own participation.

Looking to the third factor, we conclude that the possibility that Hood's statement was based on faulty recollection is remote. Because Hood's statement was a direct allegation about a murder and not a statement of routine events, it is unlikely that he had forgotten the critical details of the murder.

Finally, the circumstances surrounding the statement do not suggest that Hood misrepresented Copeland's involvement in the crime. Hood's statement was strongly against his own penal interest, since he admitted his part in the conspiracy to murder Cobb.[11] Thus, this factor weighs in favor of reliability.

Upon consideration of all these factors, we conclude that sufficient indicia of reliability existed to afford the jury a satisfactory basis for evaluating the truth of Hood's statement.[12] Copeland argues that the statement is not reliable because Bell and Thompson came forward as a result of a reward offer and because of the inconsistencies in their stories. These arguments miss the mark, however, because they focus on the credibility of Bell and Thompson. Copeland strongly attacked their credibility on cross-examination. In analyzing the reliability of a co-conspirator's statements, courts must focus on the *declarant's* statement and its surrounding circumstances, not the trustworthiness of the witness' testimony.[13]

3. Copeland also contends that admission of Hood's out-of-court statements through the testimony of Bell, Thompson and Penson was error under *Bruton v. United States*,[14] which prohibits the admission of the confession of a non-testifying co-defendant against the defendant in a joint trial.

(a) Hood's statements to Bell and Thompson were made shortly after the crime, prior to arrest, and were non-custodial statements to acquaintances. Therefore, the statements are more appropriately considered declarations of a co-conspirator, rather than confessions, and must be analyzed as in Division 2 above.[15]

(b) Penson testified on cross-examination that a detective told him that Hood had made a statement to police implicating Copeland.

---

[11] Compare *Horton v. Zant*, 941 F2d 1449, 1465 (11th Cir. 1991) (declarant's statement denied his own participation in the murder, blaming it all on his co-conspirator).

[12] *Dutton*, 400 U. S. at 89.

[13] *Castell*, 250 Ga. at 779-780.

[14] 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

[15] *Brown v. State*, 262 Ga. 223, 225 (416 SE2d 508) (1992).

To the extent that this reference to Hood's statement to police rises to a *Bruton* violation, it was not harmful because it was cumulative of Penson's testimony on direct that he saw Copeland shoot Cobb.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 13, 1996.

*Tony L. Axam,* for appellant.

*Lewis R. Slaton, District Attorney, Leonora Grant, Anita T. Wallace, Assistant District Attorneys, Michael J. Bowers, Attorney General, Christopher S. Brasher, Assistant Attorney General,* for appellee.