A01A2404. SMITH v. THE STATE.
(558 SE2d 455)

MILLER, Judge.

After obtaining the driver's consent to search his vehicle, an officer found 40 grams of cocaine under the passenger seat on which defendant had been sitting. The driver testified that when the officer activated his blue lights, the driver pulled the cocaine out of his pocket and tried to get the defendant to take it, and that when the defendant refused, the driver placed the drugs in the console between the seats. The question on appeal is whether this evidence established a prima facie case of defendant's participation in a conspiracy to traffic in cocaine so as to allow into evidence hearsay statements of a co-conspirator. Since the defendant was the only one who had the opportunity to move the cocaine from the console to under his seat, we hold that evidence showed defendant's participation in the conspiracy and thus the court properly admitted the statements.

Construed in favor of the verdict, the evidence showed that an officer, informed that a vehicle was possibly carrying drugs, stopped that vehicle for speeding. The officer and the driver spoke for a few minutes in the officer's patrol car, and the driver consented to a

---

[7] *Dunn*, supra, 248 Ga. App. at 224.

search of his vehicle. The officer then removed the passenger, Jessie B. Smith, from the front passenger seat and found 40 grams of cocaine under that seat. Claiming that the substance first had to be tested before any arrests were made, the officer allowed Smith and the driver to leave in the vehicle. They drove to the residence of Smith's nephew.

Police monitoring the phone calls of the nephew taped three conversations that took place within the next hour and a half. In the first, the driver announced to the nephew that the police "got me and Jessie B. [Smith]" and that the police took the drugs. In the second, the nephew told another person that the driver gave the drugs to Smith to put them in his pocket and that Smith did so but then slipped them out of his pocket and hid them under the seat. In the third, the nephew told yet another person that (1) he sold $3,000 in cocaine to the driver that day, whereupon Smith and the driver drove off together, (2) Smith told the driver to slow down to avoid apprehension since drugs were in the car, (3) when the officer stopped the vehicle, the driver gave the drugs to Smith, who feigned placing them in his pocket but who actually slipped them under the seat, and (4) Smith reaffirmed to the nephew his earlier opinion that the driver was a police informant.

The nephew and the driver pled guilty to conspiring to traffic in cocaine. The State charged Smith with trafficking in cocaine and with conspiring to traffic in cocaine. Smith moved to suppress the tapes of the nephew's statements, which motion the court denied when it found that an ongoing conspiracy was shown from evidence independent of the statements and that the statements met the indicia of reliability. The court twice reaffirmed its ruling when Smith repeatedly raised the issue during trial. As part of his case, Smith called the driver as a witness, who testified that the drugs were his and that when the officer activated his blue lights, he tried to give the drugs to Smith, who refused. He then placed them in the console that was between the seats. He could not explain how the drugs got under the passenger seat.

The jury acquitted Smith of the trafficking charge but found him guilty of the conspiracy to traffic charge. Smith appeals, contending that the evidence was insufficient, that the court erred in admitting the nephew's statements, and that the court failed to charge the jury that they had to find Smith was involved in the conspiracy before they could consider the nephew's statements. Discerning no error, we affirm.

1. To sustain a criminal conviction, the evidence as construed in favor of the verdict must be sufficient to authorize the jury's finding of the defendant's guilt of the crime charged beyond a reasonable

doubt.[1] Conspiracy to traffic in cocaine requires evidence that Smith conspired with others to knowingly possess twenty-eight grams or more of cocaine and that one of the conspirators took an overt act to this end.[2] Smith concedes that ample evidence established such a conspiracy between his nephew and the driver; however, he contends that no evidence established his participation in the conspiracy.

We disagree. While mere presence at a crime scene is alone insufficient to convict one of being a party to a crime, one's presence, companionship, and conduct before, during, and after the commission of the crime are factors, even if only circumstantial, that the jury may consider in determining whether defendant participated in a conspiracy to commit the crime.[3] A conspiracy is in progress until the ultimate object is accomplished, including efforts to conceal the crime and the identity of the perpetrators.[4] Furthermore, statements made by a conspirator during the course of the conspiracy are admissible against all conspirators after the conspiracy is proved.[5]

Here the evidence was ample to allow the jury to infer that Smith knowingly participated in the conspiracy. After the driver picked up the cocaine from Smith's nephew, Smith told him to drive slower to avoid apprehension. When the officer activated his blue lights, the driver tried to give the drugs to Smith, who refused. The driver then placed the drugs in the console between the seats. Smith waited in the vehicle while the officer spoke with the driver in his patrol car. When the officer then searched the vehicle, he found the drugs under Smith's seat, which allowed the inference that Smith removed them from the console and placed them under the seat for purposes of concealment. Other statements made by the nephew allowed the alternate inference that Smith willingly took the drugs from the driver and discreetly placed them under the seat for concealment. In either case, the evidence sufficed to exclude reasonable hypotheses of innocence[6] and showed that Smith tacitly agreed to participate in the conspiracy to knowingly possess more than 28 grams of cocaine.[7]

Smith claims that his acquittal on the trafficking count showed that he did not jointly possess the cocaine and thus precluded a guilty verdict on the conspiracy to traffic count. Since *Milam v. State*[8]

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Woods v. State*, 244 Ga. App. 359 (535 SE2d 524) (2000).

[2] OCGA §§ 16-4-8; 16-13-31 (a) (1).

[3] *Okongwu v. State*, 220 Ga. App. 59, 60-61 (1) (467 SE2d 368) (1996).

[4] *Avery v. State*, 269 Ga. 584, 585 (2) (502 SE2d 230) (1998).

[5] Id.; see OCGA § 24-3-5.

[6] Cf. OCGA § 24-4-6.

[7] See *Avery*, supra, 269 Ga. at 585 (2); *Okongwu*, supra, 220 Ga. App. at 61 (1).

[8] 255 Ga. 560, 562 (2) (341 SE2d 216) (1986).

abolished the inconsistent verdict rule in 1986, however, criminal defendants may not attack as inconsistent a jury verdict of guilty on one count and not guilty on another count.[9] This argument fails.

2. Citing two reasons, Smith contends that the court erred in admitting the nephew's statements. Smith first argues that before introducing the statements, the State failed to prove, via evidence independent of the statements, that Smith was a willing participant in a conspiracy to traffic cocaine.[10] He also argues that the statements did not meet the four indicia of reliability set forth in *Copeland v. State*.[11]

(a) *Independent Evidence of Conspiracy*. It is true that a co-conspirator's statements are admissible only if the defendant's participation in the conspiracy, from evidence independent of the statements, is proved.[12] It is not necessary that such independent evidence come in prior to the admission of the statements, but only that it come in at some point during the trial.[13]

Here the independent evidence came from the driver, who testified during Smith's portion of the trial that he obtained the cocaine from Smith's nephew. When the officer activated his blue lights, the driver asked Smith to hold the cocaine, which he refused. The driver placed the cocaine in the console and spoke with the officer in his patrol car. The officer then removed Smith from the vehicle and found the cocaine under Smith's seat. As noted by the trial court, the inference arises that Smith took the cocaine from the console and placed it under his seat to conceal it. This independent evidence — the inference plus Smith's uncle-nephew relationship with the cocaine supplier[14] — combines to establish a prima facie case that Smith was a willing participant in the conspiracy to traffic.

(b) *Four Indicia of Reliability*. Before admitting co-conspirator statements made during the concealment phase, the trial court must evaluate their reliability as reflected in four indicia of reliability:

(1) the absence of an express assertion about a past fact; (2) the declarant had personal knowledge of the identity and

---

[9] *Kolokouris v. State*, 271 Ga. 597, 598 (2) (523 SE2d 311) (1999); see *Givens v. State*, 273 Ga. 818, 820 (1) (546 SE2d 509) (2001).

[10] See OCGA § 24-3-5; *Bragg v. State*, 52 Ga. App. 69 (1) (182 SE 403) (1935).

[11] 266 Ga. 664, 665 (2) (b) (469 SE2d 672) (1996).

[12] See *Gilstrap v. State*, 162 Ga. App. 841, 846-847 (10) (292 SE2d 495) (1982).

[13] Id. at 847 (10); see *Isaac v. State*, 269 Ga. 875, 878 (6) (505 SE2d 480) (1998); *Blue v. State*, 212 Ga. App. 847, 849 (3) (443 SE2d 635) (1994).

[14] See *Robinson v. State*, 175 Ga. App. 769, 772 (2) (334 SE2d 358) (1985) (uncle-nephew relationship; "where transactions involving relatives are under review slight circumstances are often sufficient to induce a belief that there was collusion between the parties") (citations and punctuation omitted); see also *Lang v. State*, 171 Ga. App. 368, 370 (2) (320 SE2d 185) (1984).

roles of the participants in the crime and cross-examination of the declarant would not have shown that the declarant was unlikely to know whether the defendant was involved in the crime; (3) the possibility that the declarant's statement was founded on faulty recollection was remote; and (4) the circumstances under which the declarant gave the statement suggest that the declarant did not misrepresent the defendant's involvement in the crime.[15]

The statements here are express assertions about past facts, and thus the first factor weighs against reliability.[16] The other three, however, all weigh in favor of reliability and thus, as in *Copeland v. State*,[17] allowed the trial court to admit the statements. The nephew as apparent head of the organization had personal knowledge of the participants' roles in the crime, and cross-examination would not have shown differently in that the nephew admitted to his own participation; the conversations took place within one and one-half hours of the crime; and the nephew's statements were strongly against his penal interest in that he admitted his own role in the crime.[18]

3. Smith asserts that the trial court failed to instruct the jury that it must first find defendant's participation in the conspiracy was proved before it could consider the co-conspirator's statements. The record belies this assertion, as the court gave verbatim the relevant instruction requested by Smith, which instruction set forth this point. This enumeration fails.

*Judgment affirmed. Andrews, P. J., and Eldridge, J., concur.*

DECIDED DECEMBER 20, 2001.

*John T. Strauss*, for appellant.
*W. Kendall Wynne, Jr., District Attorney*, for appellee.

---

[15] *Copeland*, supra, 266 Ga. at 665 (2) (b), citing *Dutton v. Evans*, 400 U. S. 74, 88-89 (91 SC 210, 27 LE2d 213) (1970) (plurality opinion).
[16] *Copeland*, supra, 266 Ga. at 665 (2) (b).
[17] Id. at 665-666 (2) (b).
[18] See id.