**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS***
***COURT. ALL FILINGS MUST BE SUBMITTED WITHIN***
***THE TIMES SET BY OUR COURT RULES.***

**November 30, 2021**

# In the Court of Appeals of Georgia

A21A1399. BERNAL v. THE STATE.

HODGES, Judge.

This is the second appearance of this case in this Court. In *Bernal v. State*, 358 Ga. App. 681 (856 SE2d 64) (2021) ("*Bernal I*"), we affirmed in part the Superior Court of Cherokee County's order denying Estuardo Bernal's motion for new trial as amended following his convictions for child molestation, rape, and terroristic threats, but vacated a portion of the trial court's order in which a successor judge failed to exercise discretion in the review of Bernal's "general grounds" argument. See OCGA §§ 5-5-20, 5-5-21. On remand, the trial court entered an order again denying Bernal's motion for new trial. Bernal appeals, arguing that the evidence was insufficient to support his convictions for rape and child molestation and that he received ineffective assistance of counsel at sentencing. Finding no error, we affirm.

1. Bernal first contends, as he did in his original appeal, that the evidence was insufficient to support his convictions. However, the substance of Bernal's argument is that he is entitled to a new trial pursuant to OCGA §§ 5-5-20 and 5-5-21. This argument is without merit.

In *Bernal I*, we found, when viewed in a light most favorable to the verdict, the evidence adduced at trial revealed that

> Bernal lived with his long-time girlfriend ("the adult victim"), their two children, and the adult victim's daughter, J. G. ("the child victim"), in Canton, Cherokee County. Bernal's relationship with the adult victim was often turbulent, and the child victim frequently heard the pair fighting and her mother crying. The child victim also witnessed Bernal hit the adult victim repeatedly. By 2015, the adult victim attempted to avoid Bernal by retreating to their children's room when he arrived home from work. However, the adult victim described an incident in which Bernal chased her down some stairs, caught her on a couch, and forcibly had sexual intercourse with her as she fought him and told him to stop. She relayed another occasion in which Bernal stormed the children's room, dragged the adult victim from the room, and again forced himself on her against her will.

> The day after Bernal dragged the adult victim from their children's room, she went to the Canton police station to report the assault. An officer directed her to a local hospital for testing, which revealed the presence of sperm, bruising, and a rash. The next day, the adult victim

visited the station again and indicated she did not want to pursue charges against Bernal. She suggested that she did not want to proceed because a man with whom she had recent relations was no longer in the country and that, if Bernal found out about him, Bernal would have killed her.

In November 2015, Bernal moved out of the family's apartment, but begged the adult victim to reconcile in February 2016. The two began dating again, and Bernal supervised the children when the adult victim worked at night. Thereafter, Bernal twice visited the adult victim at her job after taking her children to her sister's house. During the second visit, which occurred after the adult victim informed Bernal that she no longer wished to date him, Bernal told her that she "was going to die and … something was going to happen to [her] in one week if [she] didn't go back with him." As the adult victim pleaded for Bernal to explain himself, he returned to his truck and said, "I'm going to kill you" as he drove away. When the adult victim went to retrieve their children, they exclaimed, "daddy's going to kill you."

That night, the adult victim again called the police. As the adult victim ran to her door to admit a responding police officer, the child victim stopped her and said, "Mommy, I've got something to tell you." The child victim then told the adult victim that, one evening when she was sleeping in the same bed as Bernal, Bernal began pulling her head toward his penis as she tried to push him away. The child victim also reported the incident to the responding officer.

(Footnote omitted.) 358 Ga. App. at 682-683.

As a threshold matter, we do not reach Bernal's "general grounds" argument as it is presented. OCGA § 5-5-20 authorizes the trial court to grant a new trial "[i]n any case when the verdict of the jury is found contrary to evidence and the principles of justice and equity[,]" and OCGA § 5-5-21 empowers the trial court to grant a new trial "where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding." Read together, these statutes provide

> the trial court broad discretion to sit as a thirteenth juror and weigh the evidence on a motion for new trial alleging [the foregoing] general grounds. Our sovereign, the law, has in effect said to the trial judge: We charge you to let no verdict stand unless your conscience approves it, although there may be some slight evidence to support it.

(Citations and punctuation omitted.) *Walker v. State*, 292 Ga. 262, 264 (2) (737 SE2d 311) (2013). Importantly,

> [*t*]*he decision to grant a new trial on grounds that the verdict is strongly against the evidence is one that is solely in the discretion of the trial court.* Whether an appellant is asking this court to review a lower court's refusal to grant a new trial or its refusal to grant a motion for directed verdict, this court can only review the case under the standard espoused in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)

4

to determine if the evidence, when viewed in the light most favorable to the prosecution, supports the verdict.

(Citations and punctuation omitted; emphasis supplied). *Batten v. State*, 295 Ga. 442, 444 (1) (761 SE2d 70) (2014), citing *Willis v. State*, 263 Ga. 597 (1) (436 SE2d 204) (1993). Because OCGA §§ 5-5-20 and 5-5-21 offer remedies reserved to the trial court, we review Bernal's insufficiency of the evidence argument pursuant to *Jackson v. Virginia* only.[1]

Under this well-recognized standard, we "view the evidence in the light most favorable to the verdict[,]" and "[w]e inquire only whether any rational trier of fact might find beyond a reasonable doubt from that evidence that the defendant is guilty of the crimes of which [he] was convicted." (Citation omitted.) *Brown v. State*, 356 Ga. App. 516, 519 (1) (848 SE2d 126) (2020). Here, Bernal's sole argument in support of this enumeration is that "there were many inconsistencies in the testimony" and that these unidentified inconsistencies "should have been weighed in favor of [Bernal]." Even assuming that this singular statement is sufficient to preserve

___

[1] In contrast to his original appeal, Bernal has not identified anything in the record suggesting that the trial court failed to apply the proper standard of review on remand. See, e.g., *Copeland v. State*, 325 Ga. App. 668, 672 (3) (754 SE2d 636) (2014). Furthermore, the record does not indicate that the trial court applied an incorrect standard of review.

5

Bernal's argument,[2] these matters clearly "concern the weight of the evidence and the credibility of the witnesses, and, as such, they provide no basis for reversal." *Chauncey v. State*, 283 Ga. App. 217, 219 (1) (641 SE2d 229) (2007) ("Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court. As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the verdict.") (citation and punctuation omitted); see also *Wright v. State*, 319 Ga. App. 723, 727 (1) (738 SE2d 310) (2013).

We conclude that, when viewed in a light most favorable to the verdict, the evidence was sufficient for a rational trier of fact to find Bernal guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Brown*, 356 Ga. App. at 519 (1); OCGA §§ 16-6-4 (child molestation), 16-6-1 (rape), 16-11-37 (terroristic threats).

2. Next, Bernal contends that he received ineffective assistance of trial counsel due to counsel's failure to advise him of his right to present evidence at sentencing.

_____

[2] See generally *Brittain v. State*, 329 Ga. App. 689, 704 (4) (a) (766 SE2d 106) (2014) ("[M]ere conclusory statements are not the type of meaningful argument contemplated by our rules.") (citation and punctuation omitted); Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

In particular, Bernal asserts that trial counsel failed to: (1) speak with him concerning a sentencing plan or have a meaningful conversation with him; (2) request additional time to call witnesses for sentencing; and (3) permit him an opportunity to review victim impact statements. This argument is unpersuasive.

To prevail on a claim of ineffective assistance of counsel during sentencing, a defendant "must show that his trial counsel rendered constitutionally deficient performance and that actual prejudice of constitutional proportions resulted." *Perkins v. Hall*, 288 Ga. 810, 811 (II) (708 SE2d 335) (2011), overruled on other grounds, *State v. Lane*, 308 Ga. 10 (838 SE2d 808) (2020). To that end, "[t]o show sufficient prejudice to prevail on his ineffective assistance claim, [Bernal] must show that there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Citation and punctuation omitted.) *Perkins*, 288 Ga. at 811-812 (II). Of course, both "[e]rror *and* prejudice must be shown in order to prevail on a claim of ineffective assistance of counsel." (Citation and punctuation omitted; emphasis supplied.) *Zellmer v. State*, 257 Ga. App. 346, 348 (2) (571 SE2d 174) (2002).

Pretermitting whether trial counsel performed deficiently in the manner claimed by Bernal, Bernal has failed to show that he was prejudiced by counsel's alleged inaction. During the hearing on his motion for new trial, Bernal did not introduce any evidence concerning the witnesses he would have called at sentencing, what the witnesses' testimony might have included, what his response would have been to the victim impact statements presented during sentencing, or, indeed, what beneficial effect — if any — such evidence might have had on his sentencing. Cf. *Davis v. State*, 286 Ga. 74, 78 (4) (686 SE2d 249) (2009) (holding that defendant failed to show prejudice resulting from ineffective assistance of counsel at sentencing where defendant did not "suggest what evidence might have served to mitigate his sentence; he offered no witnesses and proffered no affidavits on this issue at the hearing on the motion for new trial"); *Harris v. State*, 345 Ga. App. 80, 82 (1) (d) (812 SE2d 342) (2018) (same). In short, Bernal did not satisfy his burden to demonstrate a "reasonable probability . . . that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Citation and punctuation omitted.) *Perkins*, 288 Ga. at 812 (II). Having failed to show prejudice, it necessarily follows that Bernal has not proven that he received ineffective assistance of trial counsel at sentencing.

In sum, we conclude that the evidence was sufficient to support Bernal's convictions. We further conclude that Bernal has failed to satisfy his burden to demonstrate ineffective assistance of trial counsel. Therefore, we affirm the trial court's order denying Bernal's motion for new trial as amended.

*Judgment affirmed. Miller, P. J., and Pipkin, J., concur*.